# EXHIBIT "B"

FILED
DALLAS COUNTY
7/28/2017 5:37 PM
FELICIA PITRE
DISTRICT CLERK
Marissa Pittman

2-CIT SOS ES

NO. DC-17-09169

| | | |
|---|---|---|
| FLEETWOOD SERVICES, LLC, ROBERT L. FLEETWOOD and PAMELA A FLEETWOOD, | § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/b/a PAR FUNDING, and PRIME TIME FUNDING, LLC, | § § § § § | |
| Defendants. | § | ____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Fleetwood Services, LLC, Robert L. Fleetwood and Pamela A. Fleetwood file their Original Petition against Defendant Complete Business Solutions Group, Inc. d/b/a Par Funding and Prime Time Funding, LLC, as follows:

### Introduction and Discovery Control Plan

1. Plaintiffs Fleetwood Services, LLC, Robert L. Fleetwood and Pamela A. Fleetwood allege that discovery in this case should be conducted under Level 2 as described in Rule 190 of the Texas Rules of Civil Procedure.

2. Plaintiffs Fleetwood Services, LLC, Robert L. Fleetwood and Pamela A. Fleetwood seek monetary relief monetary relief over $200,000.00 but not more than $1,000,000.00.

### Parties and Venue

3. Plaintiff Fleetwood Services, LLC ("Fleetwood Services") is a Texas limited liability company with its principal office in Dallas, Dallas County, Texas.

4. Plaintiff Robert L. Fleetwood ("Mr. Fleetwood") is a natural person residing in Dallas, Dallas County, Texas. The last three digits of Mr. Fleetwood's social security number are

Document No. 1

*408 and the last three digits of Mr. Fleetwood's Texas Driver's License are *590.

5. Plaintiff Pamela A. Fleetwood ("Mrs. Fleetwood") is a natural person residing in Dallas, Dallas County, Texas. The last three digits of Mrs. Fleetwood's social security number are *187 and the last three digits of Mr. Fleetwood's Texas Driver's License are *067.

6. Defendant Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding") is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania that does business in the State of Texas, but does not maintain a residence in the State of Texas, does not maintain a regular place of business in the State of Texas, has not designated nor does Defendant Par Funding maintain a registered agent in the State of Texas for service of process. Defendant Par Funding engages in and has done business in the State of Texas as such term is defined in Sections 17.042 and 17.044(b) of the Texas Civil Practice & Remedies Code. The business which Defendant Par Funding transacts in the State of Texas includes, but is not limited to the acts described below, which give rise to the causes of action asserted by Plaintiffs against Defendant Par Funding. By reason of such activity, Defendant Par Funding has appointed the Texas Secretary of State as its agent for service of process pursuant to Section 17.044(b) of the Texas Civil Practice & Remedies Code. Service of process on Defendant Par Funding may be accomplished by serving duplicate copies of the process upon the Texas Secretary of State who, in turn, shall immediately mail a copy of the process to Defendant Par Funding at its home office located at 141 N. 2nd Street, Philadelphia, Pennsylvania 19106.

7. Defendant Prime Time Funding, LLC ("Prime Time") is a limited liability company duly organized and existing under the laws of the Commonwealth of Pennsylvania, that does business in the State of Texas, but does not maintain a residence in the State of Texas, does not maintain a regular place of business in the State of Texas, has not designated nor does Defendant Prime Time maintain a registered agent in the State of Texas for service of process. Defendant

Prime Time engages in and has done business in the State of Texas as such term is defined in Sections 17.042 and 17.044(b) of the Texas Civil Practice & Remedies Code. The business which Defendant Prime Time transacts in the State of Texas includes, but is not limited to the acts described below, which give rise to the causes of action asserted by Plaintiffs against Defendant Prime Time. By reason of such activity, Defendant Prime Time has appointed the Texas Secretary of State as its agent for service of process pursuant to Section 17.044(b) of the Texas Civil Practice & Remedies Code. Service of process on Defendant Prime Time may be accomplished by serving duplicate copies of the process upon the Texas Secretary of State, who, in turn, shall immediately mail a copy of the process to Defendant Prime Time at its at its home office located at 4201 Neshaminy Boulevard, Suite 108-211, Bensalem, Pennsylvania 19020.

8. This Court has jurisdiction over this matter because the amount in controversy exceeds the minimum jurisdictional limits of this Court. Venue is proper in this Court pursuant to Sections 15.002 and 15.005 of the Texas Civil Practice & Remedies Code because all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County, Texas, and all claims or actions arise out of the same transaction, occurrence or series of transactions or occurrences.

### Merchant Cash Advance Industry's Predatory Practices

9. Plaintiffs Fleetwood Services, Mr. Fleetwood and Mrs. Fleetwood were victimized by a predatory merchant cash advance lender and its respective broker, who intentionally and systematically took advantage of Plaintiff Fleetwood Services at a time when it was experiencing cash-flow issues.

10. Plaintiffs are not alone. Numerous other small businesses and citizens across the nation have similarly been victimized by the same predatory lending scheme, as evidenced by the number of lawsuits filed by victims in California, Massachusetts, Michigan, Mississippi, New

York, and Pennsylvania, all claiming similar cash advance transactions were based upon false and misleading representations.

11. In the recently created industry of what is in essence the commercial equivalent of payday lenders, unscrupulous merchant cash advance lenders ("MCA Lenders") and their brokers ("MCA Brokers") overwhelm financially-strapped small business owners with offers of quick and easy short-term cash advances (referred to as "Purchase Price"). The Purchase Price offered to the small business is purportedly based upon the purchase of a specified percentage of the businesses' future receivables ("Purchased Amount"). However, in order to receive the much-needed cash advance, the MCA Lenders and MCA Brokers require that the business owners permit daily ACH debits at a designated fixed amount from the business checking account, until the Purchased Amount had been repaid in full. In order to approve the transaction, MCA Lenders require UCC security agreements, personal guarantees of repayment of the Purchased Amount, and in a number of transactions, executed Confessions of Judgment for the Purchased Amount.

12. The scheme commences with a single predatory loan. After inducing the victim to enter into a starter loan, the MCA Lenders and MCA Brokers then actively encourage and solicit new loans from other MCA Lenders to ensure the victim has sufficient short-term assets to pay off the first criminally usurious loan (a phenomenon known as "stacking"). As a result of the victim's desperation to save the business, the victim becomes easy prey at the hands of these unlicensed, unregulated, unscrupulous MCA Lenders and MCA Brokers holding themselves out as financial services experts, charging whatever they want. The victim is effectively caught in an unsustainable spiral that drains not only the assets of the business, but also the personal assets of these small business owners.

13. Enter the merchant cash advance debt consolidators, such as Defendant Par Funding, which market themselves as self-professed business consultants with specialized

**PLAINTIFFS' ORIGINAL PETITION - Page 4**

expertise in assisting small businesses, like Plaintiff Fleetwood Services, to manage its debt. However, these debt consolidators' programs are actually designed to protect the financial interests of MCA Lenders, at the direct financial expense of the small business borrower.

## Background Facts

14. Plaintiff Fleetwood Services is a small business, providing golf course construction, development, renovation and remodeling. Plaintiffs Mr. Fleetwood and Mrs. Fleetwood are its owners.

15. Defendant Par Funding is a lender in the merchant cash advance industry, tempting its customers with promises of immediate working cash.

16. In or about January 2017, Plaintiff Fleetwood Services experienced cash flow issues and was at that time unable to qualify for a conventional loan. In order to save its business, Plaintiff Fleetwood Services had no option but to enter into various merchant cash advance agreements with other lenders, which had resulted in daily ACH debits of $6,667.00 per business day from Plaintiff Fleetwood Services' business account.

17. In or about January 2017, Defendant Prime Time, a broker for Defendant Par Funding, contacted Plaintiff Fleetwood Services offering to provide it with the following:

    a.  financial consulting services with respect to managing its existing debt; and

    b.  a debt consolidation program that would provide capital for paying off existing debt as well as fresh capital with which to grow business.

18. On or about January 4, 2017, Plaintiff Fleetwood Services entered into a loan transaction with Defendant Par Funding, purporting to be in the form of a purchase of Plaintiff Fleetwood Services' future receivables. Defendant Prime Time acted as a broker and facilitated the transaction. The loan was disguised in the form of a purchase of Plaintiff Fleetwood Services' future receivables under a *Factoring Agreement* with Defendant Par Funding (the "Par

Agreement") that provided as follows:

| Purchase Amount | Purchase Price | ACH Payments | Other Fees | "Specified Percentage" | Undisclosed APR |
|---|---|---|---|---|---|
| $370,000 | $547,600 | $5,000.25 x 110 | $995.00 | 25% | 114.07% |

19. Terms of the Par Agreement included, but were not limited to:

   a. In exchange for providing a total of $370,000.00, Plaintiff Fleetwood Services became obligated to repay $547,600.00 by way of 110 payments of $5,000.25, with payment in full estimated to be made by June 12, 2017;

   b. Full recourse protection for Defendant Par Funding in event of default or bankruptcy. Plaintiff Fleetwood Services was required to execute a security agreement; Plaintiffs Mr. Fleetwood and Mrs. Fleetwood were required to execute personal guarantees as well as confessions of judgment as a condition of the transaction, thereby permitting Defendant Par Funding to immediately seize Plaintiff Fleetwood Services' business assets as well as the personal assets of Plaintiffs Mr. Fleetwood and Mrs. Fleetwood and to obtain a Judgment by Confession without even notifying them;

   c. Plaintiff Fleetwood Services was required to turn over all its user names, passwords and bank account information. Any attempt by Plaintiff Fleetwood Services to change either the user name or password without advising Defendant Par Funding was defined as an event of default;

   d. Failure by Plaintiff Fleetwood Services to make the daily fixed payment was defined as an event of default, even if Plaintiff Fleetwood Services had no receivables that day;

   e. A purported 25% was identified as the specified percentage of receivables at issue, which had nothing to do with the terms of repayment other than to appear as though that was the percentage of interest being charged for the loan; and,

   f. Substantial fees could be assessed by Defendant Par Funding for, including but not limited to, insufficient funds ($75.00 each up to four times before default declared), rejected ACH attempts ($100.00), change of bank accounts ($50.00), default fee ($5,000), and collection expenses in event of default.

20. The purported fair market value of Plaintiff Fleetwood Services' future receivables was unilaterally dictated by Defendant Par Funding, and was based upon the credit worthiness of Plaintiff Fleetwood Services. In contrast, a true factoring agreement determines the fair market

value of the receivable, based on the credit worthiness of the customer who is expected to pay the receivable.

21. The Par Agreement purported to purchase 25% of Plaintiff Fleetwood Services' accounts receivables. However, Defendant Par Funding's fixed daily debits have nothing to do with any calculation of Plaintiff Fleetwood Services' receivables. Rather, any and all receivables from any customer in any amount based on any sale is subject to transfer to Defendant Par Funding for payment of the daily fixed debit.

22. Pursuant to the terms of the Par Agreement, as opposed to a true factoring arrangement, Plaintiffs Mr. Fleetwood and Mrs. Fleetwood bear the entire risk of a customer not paying, rather than Defendant Par Funding.

23. In reality, the true purpose of the Par Agreement was to protect the financial interests of Defendants Prime Time and Par Funding, while increasing Plaintiff Fleetwood Services' dependence on future loans, because the debt consolidation program offered by Defendant Par Funding was designed to fail.

24. In furtherance of Defendants Prime Time and Par Funding's fraudulent and deceptive scheme, they fraudulently and/or negligently induced Plaintiff Fleetwood Services to enter into the purported debt consolidation program by making knowingly false and misleading representations such as that "the purpose of the [Par Funding] consolidation funding program is for [Fleetwood Services] to move away from cash advance companies."

25. Defendants Prime Time and Par Funding repeatedly represented that the consolidation funding would alleviate daily cash flow concerns by reducing Plaintiff Fleetwood Service's daily ACH debits from $6,667.00 per business day to $5,000.25, a savings represented to be of approximately $1,666.75 each business day.

**PLAINTIFFS' ORIGINAL PETITION - Page 7**

26. In an effort to intentionally mislead and/or negligently make Plaintiff Fleetwood Services believe that its cash flow would improve, Defendants Prime Time and Par Funding represented that Defendant Par Funding would be wiring in a set amount of cash infusion over an initial nine (9) weeks of the loan, so that those funds could be used to make Plaintiff Fleetwood Services' payments to other lenders. However, by the time Defendant Par Funding took the 33rd ACH from Plaintiff Fleetwood Services' bank account, all of the upfront cash infusion that was used to induce Plaintiff Fleetwood Services into the debt consolidation program was used up. As a result, Plaintiff Fleetwood Services was left paying thousands of dollars more to Defendant Par Funding than it had been paying prior to the debt consolidation program offered.

27. Defendants Prime Time and Par Funding conspired to make these knowingly false, misleading and/or negligent representations in an intentional attempt to lead Plaintiff Fleetwood Services to believe that this consolidation program would improve its cash flow, when in actuality, it was purposefully and/or negligently designed to worsen Plaintiff Fleetwood Services' cash flow and thereby increase its dependence on further loans exclusively from Defendant Par Funding. In fact, another hidden term of the Par Agreement conveniently limited Plaintiff Fleetwood Services to seeking any further business loans exclusively from Defendant Par Funding.

28. The cash flow benefit touted by Defendants Prime Time and Par Funding not only quickly evaporated over the life of the loan, but resulted in a longer loan term and the payment of additional interest. As expected and/or negligently designed, the daily payments under the debt consolidation program forced Plaintiff Fleetwood Services to either come up with its own additional capital or borrow even more money from Defendant Par Funding. Coincidentally, it was about that time that Plaintiff Fleetwood Services became financially strained from the existing relationship with Defendant Par Funding that it was offered an opportunity by Defendant Par Funding to refinance its remaining balance, at a reduced daily rate but for an extended additional

**PLAINTIFFS' ORIGINAL PETITION - Page 8**

period of time.

29.  During the course of the Par Agreement, there were days when there were insufficient funds to cover the daily ACH debit taken by Defendant Par Funding. On a number of occasions, threats were made by a representative at Defendant Par Funding that unless payments in full were made, a default would be declared. Further, Plaintiffs Mr. and Mrs. Fleetwood were warned that if default was declared they would lose the business, their house and all their personal assets. These threats caused tremendous emotional and mental distress to Plaintiffs Mr. Fleetwood and Mrs. Fleetwood since everything they owned was at risk of seizure and/or foreclosure.

30.  After being trapped in Defendant Par Funding's tentacles without ability to put an end to the debt consolidation scheme, Plaintiff Fleetwood Services finally qualified for a Small Business Loan with a traditional lender. On July 5, 2017, Plaintiff Fleetwood Services was able to pay-off Defendant Par Funding in full. Notwithstanding, Plaintiff Fleetwood Services continues to receive calls from brokers and lenders seeking to tempt Plaintiff Fleetwood Services with additional merchant cash advances.

### Violation of Texas Theft Liability Act – All Defendants

31.  Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 30, inclusive, as if set forth herein in full.

32.  Defendants have unlawfully appropriated property from Plaintiff Fleetwood Services and have therefore committed theft as described by Section 134.001 *et seq.* of the Texas Civil Practice and Remedies Code, the Texas Theft Liability Act.

33.  As a proximate cause of the wrongful actions of Defendants, Plaintiff Fleetwood Services has incurred damages in excess of the minimum jurisdictional limits of this Court.

34.  Plaintiff Fleetwood Services sues Defendants for the amount of the actual damages incurred and additional damages as defined under the Texas Theft Liability Act.

### Fraud in the Inducement – All Defendants

35. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 30, inclusive, as if set forth herein in full.

36. Defendants knowingly made false representations of material facts and knowingly failed to disclose other material facts in order to induce the Plaintiffs to enter into the transactions with the Defendants. The misrepresentations and omissions were material in that had Plaintiffs known the truth, they would not have entered into the transactions.

37. Each and every misrepresentation or omission of material fact made by Defendants was relied upon by the Plaintiffs to their substantial injury and damages as set forth below. In this connection, Plaintiffs further allege that Defendants had superior knowledge concerning the financial transactions proposed and Plaintiffs justifiably relied upon Defendants' superior knowledge.

38. By reason of Plaintiffs' reliance upon the representations of Defendants, Plaintiffs have suffered damages in excess of the minimum jurisdictional limits of this Court. In addition, Plaintiffs seek the remedy of rescission.

39. Plaintiffs further allege that the harm that they suffered was the result of fraud and malice as such terms are defined in Section 41.001 of the Texas Civil Practice Code and therefore, Plaintiffs are entitled to recover exemplary damages from Defendants.

### Negligent Misrepresentation – All Defendants

40. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 30, inclusive, as if set forth herein in full.

41. Defendants negligently made false representations of material facts and negligently failed to disclose other material facts in order to induce the Plaintiffs to enter into the transactions

with Defendant Par Funding. The misrepresentations and omissions were material in that had Plaintiffs known the truth, they would not have entered into the Par Agreement.

42. Each and every misrepresentation or omission of material fact made by Defendants was relied upon by the Plaintiffs to their substantial injury and damages as set forth below. In this connection, Plaintiffs further allege that Defendants had superior knowledge concerning the financial transactions proposed and Plaintiffs justifiably relied upon Defendants' superior knowledge.

43. By reason of Plaintiffs' reliance upon the representations of Defendants, Plaintiffs have suffered damages in excess of the minimum jurisdictional limits of this Court.

44. Plaintiffs further allege that the harm that they suffered was the result of fraud and malice as such terms are defined in Section 41.001 of the Texas Civil Practice Code and therefore, Plaintiffs are entitled to recover exemplary damages from Defendants.

### Intentional Infliction of Emotional Distress – All Defendants

45. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 30, inclusive, as if set forth herein in full.

46. Defendants acted intentionally and recklessly, and in an extreme and outrageous manner, pushing Plaintiffs Mr. Fleetwood and Mrs. Fleetwood toward personal financial ruin, thereby inflicting severe emotional distress on Plaintiffs Mr. Fleetwood and Mrs. Fleetwood.

47. As a direct and proximate result of this conduct, Plaintiffs Mr. Fleetwood and Mrs. Fleetwood have incurred damages in excess of the minimum jurisdictional limits of this Court.

### Civil Conspiracy – All Defendants

48. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 47, inclusive as if set forth herein in full.

49. Defendants combined to accomplish an unlawful purpose and/or to accomplish a lawful purpose by unlawful means. Defendants acted maliciously, without legal justification, and with the intent of injuring Plaintiffs. As such, Defendants have engaged in a civil conspiracy. In the course of their civil conspiracy, Defendants committed one or more unlawful, overt acts. Such unlawful, overt acts include Defendants' conduct described above. Such actions by Defendants subject such Defendants to joint and several liability.

### Attorneys' Fees

50. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 34, inclusive as if set forth herein in full.

51. Plaintiffs have hired the law firm of Jones, Davis & Jackson, P.C. to represent them in this matter and have agreed to pay such attorneys a reasonable and necessary attorneys' fee for their services. Pursuant to Section 134.005 of the Texas Civil Practice and Remedies Code, and other applicable law, Plaintiffs are entitled to recover from Defendants their reasonable and necessary attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Fleetwood Services, LLC, Robert L. Fleetwood and Pamela A. Fleetwood prays that Defendants Complete Business Solutions Group, Inc. d/b/a Par Funding and Prime Time Funding, LLC be cited to appear and answer herein, and upon a final hearing hereof, judgment be entered in favor of Plaintiffs and against Defendants, jointly and severally, as follows:

1. actual damages;
2. rescission;
3. exemplary damages;
4. additional damages as provided by the Texas Theft Liability Act;
5. prejudgment interest, if any, at the highest lawful rate;

6. reasonable and necessary attorneys' fees;

7. all costs of court;

8. post-judgment interest on the above sums at the highest lawful rate; and

9. such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

JONES, DAVIS & JACKSON P.C.

By: /s/ Wendy D. Dawer
Matthew K. Davis
State Bar No. 05526000
E-Mail: mdavis@jonesdavis.com
Wendy D. Dawer
State Bar No. 24036451
E-Mail: wdawer@jonesdavis.com

15110 Dallas Parkway, Suite 300
Dallas, Texas 75248
Telephone: (972) 733-3117
Fax: (972) 733-3119

ATTORNEYS FOR PLAINTIFFS