**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 9:24-CV-80716-RAR**

FLEETWOOD SERVICES, LLC, ROBERT L. FLEETWOOD, and PAMELA A. FLEETWOOD, *individually and on behalf of those similarly situated*,

Plaintiffs,

v.

GEMJ CHEHEBAR GRAT, LLC, JOSEF CHEHEBAR, and ISAAC SHEHEBAR,

Defendants.
_________________________________________/

**MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT**

Defendants GEMJ Chehebar GRAT LLC, Josef Chehebar, and Isaac Shehebar (collectively the "Defendants" or the "Chehebars") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim Plaintiffs' Third Amended Class Action Complaint, ECF No. 158 (the "TAC") *with prejudice*, and in support thereof state:

## INTRODUCTION

Plaintiffs Fleetwood Services, LLC, Robert L. Fleetwood, and Pamela A. Fleetwood filed the TAC after failing to achieve their desired results in the Securities and Exchange Commission's enforcement action against Complete Business Solutions Group, Inc. ("CBSG") that is pending before this Court. *See Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, No. 9:20-cv-81205-RAR (S.D. Fla. July 24, 2020) ("*SEC v. CBSG*" or the "Receivership"). In this case, Plaintiffs have accused this Court's appointed Receiver of "stonewall[ing] Plaintiffs' counsel's repeated attempts to engage on the substance" of their claims that CBSG's merchant cash advance agreements ("MCA Agreements") "are really loans with usurious interest rates," "collecting monies (principal, usurious interest and unconscionable fees) from the victims of these predatory lending practices," causing them "physical harm," and "even us[ing] CBSG's own collection thugs to threaten—under the guise of operating as an agent of the U.S. Government—merchants who entered into usurious loans with CBSG to obtain collections for the Receivership Estate." ECF No. 126 at 6–7, 21–22. And in the Receivership, this Court approved the Receiver's determination that Plaintiffs' claim for $3,169,944.74 should be rejected[1] and authorized the Receiver to continue to collect upon the MCA Agreements over Plaintiffs' objections.[2]

---

[1] *See SEC v. CBSG* at ECF No. 1976-5 (Claim Number 20670).

[2] *See, e.g.*, *SEC v. CBSG* at ECF Nos. 111, 112, 198, 199, 232, 233, 264, 273, 556, 556-7, 558, 575, 578, 621, 625, 651, 655, 745, 747, 799, 801, 906, 907, 1049, 1052, 1112, 1113, 1134, 1135. These are but a few examples and only include what appears to be reflected on the docket between

Plaintiffs now attempt a to evade the Receiver and this Court by asserting a claim under 18 U.S.C. § 1962(d) against the Chehebars for violating the civil RICO statute by conspiring with CBSG "in its goal of collecting unlawful debt through the use of MCA Agreements" by "being the critical funders of the MCA Agreements by which the Enterprise would collect unlawful debts," TAC ¶¶ 182–83, and seeking to transfer this action to the Southern District of New York, *see* ECF No. 156 ¶ 3, where Plaintiffs' counsel has filed an identical putative class civil RICO action and where Plaintiffs believe they will get a second shot at litigating whether the MCA Agreements are usurious loans, *see* Second Am. Class Action Compl., *B & T Supplies, Inc. v. GEMJ Chehebar GRAT, LLC*, Case No. 1:23-cv-11241-JAV-HJR (S.D.N.Y. Mar. 19, 2025), ECF No. 74 (the "SDNY Action"); *see also* Countercl. Pltfs.' Memo. of Law In Opp. to Countercl. Defs.' Mot. to Dismiss at 10–11, *Whalen v. GEMJ Chehebar GRAT, LLC*, Case No. 2:19-cv-06181-JS (E.D. Pa. Dec. 6, 2024) (the "EDPA Action"), ECF No. 81 (urging the court to transfer the EDPA Action "to the SDNY and marked as related to the SDNY action").

---

the inception of the matter on July 24, 2020 through January 18, 2022. The Receiver indicated in his April 30, 2025 Quarterly Report that he has "been continuing to collect on the accounts receivable for the merchant cash advance ('MCA') accounts that were pending with the company as of the time the Receiver took over the operations of Par Funding." Quarterly Report at 3, *SEC v. CBSG* (April 30, 2025), ECF No. 2140. Among other enforcement efforts, the Receiver initiated "68 actions against merchants in the Philadelphia Court of Common Pleas, either through civil action complaints or confessions of judgment." *Id.* at 5. There were "400 settlement agreements for all MCA companies, with approximately 380 merchants completely paid and the remainder with outstanding payments according to the agreement" as of April 30, 2025. *See* DSI Report at 4 n.2, *SEC v. CBSG* (Apr. 30, 2025), ECF No. 2140-1. Under the supervision of this Court, as the Plaintiffs acknowledged, the Receiver collected more than $120 million under the MCA Agreements. Those efforts remain ongoing, and there is a current receivable balance under the MCA Agreements of $8.1 million. *See* Quarterly Report at 3, *SEC v. CBSG* (Apr. 30, 2025 ECF No. 2140.

The problem for Plaintiffs is that this Court has already rejected their arguments and ruled that the MCA Agreements *that Plaintiffs entered* are not usurious or otherwise unlawful but are instead legal and enforceable. That ruling is final and stands.

Plaintiffs argued in the Receivership that the MCA Agreements "are absolute repayable loans giving rise to the merchant's RICO claims for the collection of unlawful debt." *See* Memo. of Law in Response to Receiver's Motion to Approve Treatment of Merchant Victim Claims at 1, 12, *SEC v. CBSG* (S.D. Fla. May 7, 2024), ECF No. 1887. The Receiver filed a response, explaining that the Plaintiffs' argument "should be dismissed as it ignores the plain language of the MCA agreements and seeks to change controlling Pennsylvania law." Receiver's Reply to Non-Party Merchants' Resp. in Opp. to Mot. (1) to Approve Proposed Treatment of Claims and (2) for Determination of Ponzi Scheme at 3–7, *SEC v. CBSG* (S.D. Fla. May 21, 2024), ECF No. 1929. On June 26, 2024, this Court agreed with the Receiver and overruled the Plaintiffs' objections. *See* Order Granting Receiver's Motion to (1) Approve Proposed Treatment of Claims and (2) For Determination of Ponzi Scheme at 36–37, *SEC v. CBSG* (S.D. Fla. June 26, 2024), ECF No. 1976 (the "June 26 Order"). This Court explained that it "accept[ed]" Plaintiffs' "invitation" to rule on their claims and objections because they "filed a twenty-page response to the Claims Motion, arguing why their claims have merit and that they should be permitted to pursue their claims in other jurisdictions," "urge[d] the Court to rule on their objections to the Receiver's Claims Motion," and "adequately presented facts and evidence in support of their respective positions." *See* June 26 Order at 37.[3] This Court overruled Plaintiffs' objections after

[3] Plaintiffs appealed the June 26 Order to the Eleventh Circuit. *See* Notice of Appeal, *SEC v. CBSG*, (S.D. Fla. July 19, 2024), ECF No. 1996. The Eleventh Circuit dismissed for lack of appellate jurisdiction Plaintiffs' appeal of the June 26 Order because the June 26 Order was not appealable. *See Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, 2024 WL 4785772, at *1 (11th Cir. Nov. 14, 2024).

it "carefully reviewed the Receiver's proposed claim determinations for these merchants, the arguments and factual information contained within the merchants' Responses to the Claims Motion, and the detailed claims files, notices of determination, and objections to the Receiver's determinations for those disputed claims that are the subject of the merchants' Responses." *Id.*

On December 16, 2024, this Court approved the Receiver's proposed distribution plan and authorizing a first interim distribution. *See* Order on Receiver's Mot. to Approve Proposed Distribution Plan and to Authorize First Interim Distribution, *SEC v. CBSG* (S.D. Fla. Dec. 16, 2024), ECF No. 2078 (the "December 16 Order"). Rather than appeal the December 16 Order,[4] Plaintiffs entered into a settlement agreement with the Receiver in which ***they agreed to the Receiver's continued collections of money owed under MCA Agreements that in this case they claim are illegal***. *See* Exhibit A at 4, 8–10 (agreeing "not to oppose, opt out of, or object to" the Eckert Seamans Settlement and agreeing that money owed by certain classes of merchants under the MCA Agreements would be reduced but *still owed* under the MCA Agreements); Settlement Agreement & Release ¶ 3.d, *SEC v. CBSG* (Dec. 24, 2024), ECF 2081-1 ("The Receiver agrees to reimburse Eckert Seaman's insurers fifteen percent (15%) ***of the remaining balance of the portfolio of merchant cash advance ("MCA") accounts of Complete Business Solutions Group, Inc. ("CBSG") d/b/a Par Funding (the "Portfolio Balance")*** as of June 7, 2023 . . . in excess of $25,000,000 that may hereafter be collected or otherwise realized through sale . . . . ***The Receiver agrees to fulfill his duties in good faith under the applicable Receivership Orders to collect the Portfolio Balance***. (emphasis added)).

---

[4] The December 16 Order was appealable as a collateral order. *See* 28 U.S.C. § 1292(a)(2); *Sec. & Exch. Comm'n v. Torchia*, 922 F.3d 1307, 1315 (11th Cir. 2019) (holding that "the district court's order approving the receiver's distribution plan is appealable as a collateral order").

To be sure, Plaintiffs filed proofs of claims in the Receivership *after* this Court denied their motion "to file proofs of claims in this action without prejudicing their rights to pursue claims in" this case "sounding in . . . federal civil RICO charges stemming from wire fraud, mail fraud, the collection of unlawful debt and extortion." *See* Expedited Mot. For Lift of Litig. Stay & Other Relief at 1–2, *SEC v. CBSG* (S.D. Fla. Mar. 10, 2023), ECF 1527; Order Denying Expedited Mot. to Lift Litig. Stay at 1, *SEC v. CBSG* (S.D. Fla. Mar. 16, 2023), ECF 1530. Thus, Plaintiffs "consent[ed] to the jurisdiction of the Court for all purposes," "agree[d] to be bound by its decisions," and "consent[ed] to be bound by the decisions of the Court as to the treatment of the Claim in a Court-approved distribution plan" because they submitted claims in the Receivership Action. *See* Order (1) Approving Proof of Claim Form; (2) Establishing Claims Bar Date and Notice Procedures; and (3) Approving Procedure to Administer and Determine Claims at ¶ 18, *SEC v. CBSG* (S.D. Fla. Dec. 23, 2022), ECF No. 1471.

Issue preclusion is designed to prevent exactly what Plaintiffs attempt here and what Plaintiffs' counsel attempts to do in the SDNY Action and EDPA Action: ignore an unfavorable outcome to pursue a different—and inconsistent— outcome in a different forum. Moreover, if Plaintiffs are permitted to relitigate the MCA Agreements' validity, the Chehebars will be required to take significant discovery from the Receiver (which the Receiver in preliminary discussions has indicated that he will resist and seek this Court's intervention). These are precisely the tactics and problems that issue preclusion is designed to prevent from occurring. *See B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 140 (2015) ("Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time, and it encourages parties who lose before one tribunal to shop around for another. The doctrine of collateral estoppel or issue preclusion is designed to prevent this from occurring."); *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("As this

Court and other courts have often recognized . . . collateral estoppel relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."). Plaintiffs' refusal to accept their loss, their attempt to bring claims dependent upon the exact same issue previously resolved by this Court "for all purposes" in a different forum in hopes of a different outcome, and the resulting waste of judicial resources, time, and expense demonstrates that issue preclusion compels dismissal of the TAC.

Plaintiffs' attempt to relitigate whether the MCA Agreements are usurious loans is also an attack on this Court's and the Receiver's collection of more than $120 million owed under the MCA Agreements in the Receivership, the continued collection of the remaining $8.1 receivable balance, and the distribution of that money to claimants in the Receivership. *See* Quarterly Report at 3, *SEC v. CBSG* (April 30, 2025), ECF No. 2140. Under Plaintiffs' theory, this Court, via its appointed Receiver, has been (and is currently) enforcing and collecting on criminally usurious MCA Agreements and "even us[ing] CBSG's own collection thugs to threaten" merchants. *See* ECF No. 126 at 6–7, 21–22. The necessary implications of Plaintiffs' theory are that (1) this Court and the Receiver are co-conspirators in the alleged CBSG RICO Enterprise who continued CBSG's practice of collecting upon unlawful debt and against whom future RICO claims (or even criminal prosecutions) would be appropriate; and (2) the proceeds from the MCA Agreements that have been distributed to claimants in the Receivership are subject to clawback by Plaintiffs because the MCA Agreements are illegal loans.

For these reasons, and because Plaintiffs' claims are untimely under the applicable four-year statute of limitations, the TAC should be dismissed with prejudice.

## ARGUMENT

### A. Plaintiffs are precluded from relitigating whether the MCA Agreements are usurious loans

As a preliminary matter, Plaintiffs affirmatively consented to the jurisdiction of this Court in the Receivership "for all purposes" and specifically agreed "to be bound by its decisions," including its decision in the June 26 Order that the MCA Agreements are not usurious loans, even if that ruling "prejudice[ed] their rights to pursue claims" in this case. *See* Order (1) Approving Proof of Claim Form; (2) Establishing Claims Bar Date and Notice Procedures; and (3) Approving Procedure to Administer and Determine Claims at ¶ 18, *SEC v. CBSG* (S.D. Fla. Dec. 23, 2022), ECF No. 1471; Expedited Mot. For Lift of Litig. Stay & Other Relief at 1–2, *SEC v. CBSG* (S.D. Fla. Mar. 10, 2023), ECF 1527; Order Denying Expedited Mot. to Lift Litig. Stay at 1, *SEC v. CBSG* (S.D. Fla. Mar. 16, 2023), ECF 1530. They are bound by this Court's decision, which is now final, and should not be permitted to relitigate the issue of the MCA Agreements' validity.

Even ignoring Plaintiffs' affirmative agreement to be bound by this Court's ruling in the June 26 Order that the MCA Agreements are not usurious loans, they are precluded from relitigating the issue in this case because the December 16 Order gives preclusive effect to the June 26 Order and this Court's ruling that the MCA Agreements that Plaintiffs entered are not usurious loans but are instead bona fide sales of accounts receivable.[5]

[5] "[T]he law is clear in the Eleventh Circuit that although collateral estoppel is normally raised as an affirmative defense under Rule 8(c), it can be asserted in a Rule 12(b)(6) motion if its existence can be judged on the face of the complaint or based upon public documents." *De Fernandez v. CMA CGM S.A.*, 2023 WL 4014730, at *18 (S.D. Fla. Apr. 30, 2023), *report and recommendation adopted*, 683 F. Supp. 3d 1309 (S.D. Fla. 2023) (Ruiz, J.). Indeed, this Court "may apply preclusion principles *sua sponte*" because it is "the same court that made the decision in the prior proceeding." *Balbin v. Williams*, 2024 WL 1239468, at *2 (S.D. Fla. Mar. 22, 2024) (Ruiz, J.) (alteration adopted).

"Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX Transp., Inc. v. Brotherhood of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003). Issue preclusion has four elements: "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Id.* "To be identical, the issues must have been litigated expressly or by implication in the prior case." *Powrzanas v. Jones Util. & Contracting Co. Inc.*, 822 F. App'x 926, 928 (11th Cir. 2020). An issue is "actually litigated" if it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Id.* And "issue preclusion requires only that the adjudication of an issue be sufficiently firm to be accorded conclusive effect." *Id.* at 929; *see Polar Vortex, LLC v. Certain Underwriters at Lloyd's, London Subscribing to Policy YHL1700840*, 2023 WL 2016832, at *8 (S.D. Fla. Feb. 14, 2023) (Ruiz, J.) ("For purposes of issue preclusion a 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." (alterations adopted)).

The first element of issue preclusion is satisfied because the issue—whether the MCA Agreements are usurious loans—is identical in both this action and in the Receivership Action.[6] In both the Receivership and in this case, Plaintiffs assert that the MCA Agreements "are absolute

[6] "[T]here is no requirement of mutuality of parties for collateral estoppel to apply." *Balbin*, 2024 WL 1239468, at *3 (quoting *Parris v. Taft*, 630 F. App'x 895, 900 (11th Cir. 2015)). "A defendant who was not a party to the original action may invoke collateral estoppel against the plaintiff." *Hamze v. Cummings*, 652 F. App'x 876, 879 (11th Cir. 2016).

repayable loans giving rise to [their] RICO claims for the collection of unlawful debt." *See* Memo. of Law in Resp. to Receiver's Mot. to Approve Treatment of Merchant Victim Claims at 12, *SEC v. CBSG* (S.D. Fla. May 7, 2024), ECF No. 1887; TAC ¶ 62 (the MCA Agreements "were in true substance and form absolutely repayable loans"). And the issue was "litigated expressly or by implication" in the Receivership when the Receiver responded in opposition to Plaintiffs' assertion, *see* Receiver's Reply to Non-Party Merchants' Resp. in Opp. to Mot. (1) to Approve Proposed Treatment of Claims and (2) for Determination of Ponzi Scheme at 3–7, *SEC v. CBSG* (S.D. Fla. May 21, 2024), ECF No. 1929, this Court agreed with the Receiver and overruled Plaintiffs' objections, *see* June 26 Order at 36–37, and this Court approved the Receiver's proposed distribution plan and authorized a first interim distribution, *see generally* December 16 Order.

The second element of issue preclusion is satisfied because the issue of whether the MCA Agreements are usurious loans was "actually litigated" in the Receivership. Plaintiffs "properly raised" the issue in their opposition to the Receiver's proposed treatment of their claims, submitted the issue to this Court for determination, and this Court determined the issue in its June 26 Order. As this Court put it, it "accept[ed]" these Plaintiffs' "invitation" to rule on their claims and objections. June 26 Order at 37.

The third element of issue preclusion is satisfied because the determination that the MCA Agreements are not usurious loans was a critical and necessary part of both (1) the June 26 Order in which the Court overruled the Plaintiffs' objections and approved the Receiver's claim determination for Plaintiffs; and (2) the December 16 Order because this Court gave final approval to the Receiver's plan of distribution and authorized the first interim distribution and recognized that "the Receiver is still in control of Receivership Entities that are actively involved in collecting on merchant account balances." *See* December 16 Order at 53. Accordingly, it was essential for

this Court to evaluate in the Receivership whether the MCA Agreements were usurious loans in determining whether to overrule the Plaintiffs' objections, approve the Receiver's claim determination for Plaintiffs, approve the Receiver's plan of distribution, and authorize a first interim distribution. *See In re Jones*, 611 B.R. 685, 699–700 (Bankr. M.D. Ala. 2020) (finding the "critical and necessary prong of the collateral estoppel test" was met because it "was essential for the District Court to evaluate" the issue in making its ruling).[7]

The fourth element of issue preclusion is satisfied because Plaintiffs had a full and fair opportunity to litigate whether the MCA Agreements were usurious loans in the Receivership. As this Court recognized, Plaintiffs "filed a twenty-page response to the Claims Motion, arguing why their claims have merit and that they should be permitted to pursue their claims in other jurisdictions," "urge[d] the Court to rule on their objections to the Receiver's Claims Motion," and "adequately presented facts and evidence in support of their respective positions." *See* June 26 Order at 37. Indeed, as Plaintiffs explained to the Eleventh Circuit in their appeal of the June 26 Order,

> [I]t cannot be disputed that Appellants participated in the district court action. For instance, on May 3, 2024, Appellants filed a motion for leave to file excess pages for their brief in opposition to the Receiver's motion that lead to the Bar Order, which the district court granted. On May 7, 2024, Appellants filed an opposition brief in the district court to oppose the Receiver's motion that led to the Bar Order. In issuing the Bar Order, the district court reiterated that it retained "exclusive jurisdiction" over all issues described in the Receiver's motion that led to the Bar Order and "in connection with the anticipated Distribution Motion" by the receiver. . . . ***Appellants participated in lower proceedings because they were invited and accepted the district court's invitation to oppose the Receiver's requested relief before the Bar Order was issued***.

[7] Although *Jones* analyzed collateral estoppel under Alabama law, it is persuasive authority on collateral estoppel under federal law "because Alabama law on the doctrines of *res judicata* and collateral estoppel is substantively the same as federal law." *Jones*, 611 B.R. at 694 (quoting *McCulley v. Bank of Am., N.A.*, 605 F. App'x 875, 878 (11th Cir. 2015)).

Exhibit B at 2–3 (emphasis added and citations omitted). Thus, Plaintiffs had a full and fair opportunity to litigate the MCA Agreements' validity in the Receivership. *See Parris*, 630 F. App'x at 900 ("In overruling the objection, the district court explained that it had considered Mr. Parris's arguments and found them to be without merit. Given these facts, we reject Mr. Parris's argument that he lacked a full and fair opportunity to litigate [the issue in the prior action].").

In the SDNY Action, Plaintiffs' counsel argued that this Court's ruling in the June 26 Order did not preclude relitigation of the MCA Agreement's validity because this Court merely determined "whether the Receiver's decision to deny the claims was 'fair and reasonable'" rather than determining "whether the Receiver's decision was legally 'correct.'" *See* Memo. of Law in Opp. to Defs.' Second Mot. to Dismiss at 10, *SDNY Action* (Jan. 31, 2025), ECF No. 64. The court in the SDNY Action ruled that, for purposes of ruling on the Chehebar's motion to dismiss, the first element of issue preclusion was not satisfied because the issues were not "identical." *See* Order at 16, *SDNY Action* (Mar. 17, 2025), ECF No. 70. The court reasoned that it "is not clear from the text of the" June 26 Order whether this Court "found that the MCA Agreements were not usurious loans by a preponderance of the evidence" rather than under a "fair and reasonable standard" and that therefore "it is not obvious that the fair and reasonable standard 'played little or no role' in" this Court's determination. *Id.* at 14–15.

This Court should not follow the SDNY court's reasoning. Unlike the court in the SDNY Action, this Court knows first-hand that it ensured that its rejection of Plaintiffs' argument that the MCA Agreements are usurious loans was legally correct based on its "careful[] review[]" of Plaintiffs' and the Receiver's arguments regarding the MCA Agreements' validity. *See* June 26 Order at 37. In the Eleventh Circuit, "the burden of persuasion in the subsequent action cannot be 'significantly heavier'" than the burden of persuasion in the initial action for a ruling to have

preclusive effect. *Sec. & Exch. Comm'n v. Rand*, 805 F. App'x 871, 875 (11th Cir. 2020). There is no difference between the burden of persuasion in this action and the burden of persuasion in the Receivership on the legal issue of the MCA Agreements' validity. The MCA Agreements' validity—both in the Receivership and in this case—is a legal issue unaffected by any evidentiary standard. This Court would not—and did not—reach an incorrect legal conclusion regarding the MCA Agreements' validity or ignore Plaintiffs' arguments and authorize the Receiver to collect on MCA Agreements that are actually usurious loans simply because the Receivership is an equitable proceeding. Furthermore, Plaintiffs' settlement with the Receiver in which they agreed to the Receiver's continued collection of money owed under the MCA Agreements reinforces that this Court's adjudication of the MCA Agreements' validity is "sufficiently firm to be accorded conclusive effect." *See Powrzanas*, 822 F. App'x at 929.

Because issue preclusion applies, Plaintiffs are precluded from relitigating the issue of whether the MCA Agreements are usurious loans. Plaintiffs' RICO claim therefore fails because it is predicated on the Chehebars' alleged conspiracy "to violate 18 U.S.C. § 1962(d) by the conduct of collection of unlawful debt" in connection with the MCA Agreements, TAC ¶ 181, and Plaintiffs' alleged RICO injuries "consist of improperly collected loan payments" in connection with the MCA Agreements, TAC ¶ 188.

### B. Plaintiffs' claim is time-barred

Plaintiffs' RICO claim is time barred because it was filed more than four years after Plaintiffs discovered or should have discovered that they were injured by paying over $ 1 million in improperly collected criminally usurious loan payments. *See* TAC ¶¶ 113–133. Plaintiffs' allegations make clear that they discovered or should have discovered this RICO injury—and the statute of limitations on their RICO claim therefore began to run—well before May 21, 2021, four years before they filed the TAC.

"The statute of limitations for civil RICO actions and conspiracy to commit RICO violations is four years from when the injury was or should have been discovered." *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1296 (S.D. Fla. 2022) (citing *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013)).

Plaintiffs' allegations establish that their injuries occurred before May 21, 2021 and that they should have discovered their RICO injuries before May 21, 2021. In particular, Mr. and Mrs. Fleetwood own and operate Fleetwood Services, LLC, and "were drowning in usurious MCA debt" and "had at least" seven MCA Agreements "[b]y January 2017." TAC ¶¶ 108, 113. On or about January 4, 2017, Fleetwood Services, LLC entered into an additional "unconscionable and usurious MCA Agreement." *Id.* ¶ 116. Between January 4, 2017 and July 5, 2017, Fleetwood paid "not less than $1,021,360 based on the financial terms of the usurious MCA Agreement." *See id.* ¶¶ 118, 129, 133. Accordingly, the date of Plaintiffs' injuries is, at the latest, July 5, 2017, the last date Plaintiffs paid "usurious MCA debt."[8]

[8] Plaintiffs do not allege any RICO injuries sustained during the limitations period. But even if they did, such allegations would not cure the statute of limitations issue because they would relate to the same core RICO injury ("improperly collected loan payments," *see* TAC ¶ 188) and therefore are not "new and independent injuries" that would trigger the separate-accrual rule. *See Lehman*, 727 F.3d at 1331 (explaining that the "separate accrual" rule is confined to a "new and independent injury" and that "when an injury is a 'continuation of an initial injury, it is not *new and independent*" (alteration adopted)). Plaintiffs "cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Id.*; *see Hawk Mountain LLC v. Ram Cap. Grp. LLC*, 689 F. App'x 703, 707 (3d Cir. 2017); *Rosenshein v. Meshel*, 688 F. App'x 60, 63 (2d Cir. 2017) ("[W]e conclude that the separate-accrual rule is inapplicable here because . . . [plaintiff's] injuries occurred when he made the allegedly fraudulent investments. The multiple foreclosures that occurred through 2011 did not constitute new and independent injuries; rather, they were merely symptoms of [plaintiff's] pre-existing injuries and, therefore, have no bearing on the limitations analysis or on our conclusion that [plaintiff's] RICO claims accrued no later than 2008."); *Weiss v. Bank of Am. Corp.*, 2016 WL 6879566, at *5 (W.D. Pa. Nov. 22, 2016) (concluding that periodic transmission of account statements which "prompted and caused Plaintiffs to make a payment" during the limitations period were not "new and separate" injuries "as contemplated by either the separate-accrual rule or its underlying principles").

Plaintiffs' allegations also establish that they should have discovered their RICO injuries before May 21, 2021. Again, Plaintiffs allege that, by January 2017, they "were drowning in usurious MCA debt" and "had at least six other MCA agreements that required onerous daily payments that Fleetwood could not afford to pay." TAC ¶ 113. Plaintiffs also allege that on or about January 4, 2017, Fleetwood Services, LLC entered into another "unconscionable and usurious MCA Agreement" under which CBSG assed an "11% interest rate" and under which Fleetwood Services, LLC paid "not less than $1,021,360." *Id.* ¶¶ 116–18, 129, 133. Thus, Plaintiffs were on notice that they were being charged criminally usurious interest rates under the MCA Agreements and therefore had discovered or should have discovered their RICO injuries upon Fleetwood Services, LLC being charged those rates. *See Youngblood-West v. Aflac Inc.*, 796 F. App'x 985, 991 (11th Cir. 2019) (affirming dismissal of civil RICO claim as untimely because the plaintiff "failed to act on the information she possessed and the four-year statute of limitations elapsed long before she filed her complaint"); *Acosta v. Campbell*, 2006 WL 146208, at *11 (M.D. Fla. Jan. 18, 2006) (concluding civil RICO claims were due to be dismissed on statute of limitations grounds where the plaintiff "knew of his 'injuries'-the alleged false jurat, usury, and unlicensed mortgage lending-in 2000 when he signed the documents at issue" more than four years before filing his complaint). Accordingly, Plaintiffs' RICO claims should be dismissed as time-barred.

In the SDNY Action, Plaintiffs' counsel argued, and the court agreed, that this Court's July 21, 2020 order in the Receivership staying all litigation involving "any of a Receivership Entity's past or present . . . agents," *see* Order Granting Pltf.'s Urgent Mot. to Amend Order Appoint Receiver to Include Litig. Injunction at 4, *SEC v. CBSG* (July 31, 2020), ECF No. 56 (the "Stay Order"), "plausibly tolled the statute of limitations" on the plaintiffs' civil RICO claims because

the plaintiffs "plausibly allege that the Chehebars were agents of CBSG" because "the Chehebars contracted to render consulting services on behalf of CBSG," *see* Order at 20, *SDNY Action* (Mar. 17, 2025), ECF No. 70.[9] This Court should not follow the SDNY court's incorrect conclusion. The Stay Order has never prohibited claims against the Chehebars; if it did, then this action, the SDNY Action, and the EDPA Action would all violate the Stay because this Court has never lifted the Stay for the purpose of allowing these actions to proceed. If the Stay Order *ever* prevented claims against the Chehebars, then it *still* prevents claims against the Chehebars. That is why no one—not the SEC, the Receiver, or the Chehebars—has moved to stay this action, the SDNY Action, or the EDPA Action or argued that these actions violate the Stay Order. Indeed, Plaintiffs' counsel also knows that the Stay Order does not apply to the actions he has filed against the Chehebars ***because he asked the SEC and the SEC responded*** that there was not "any litigation hold that would preclude litigation against the Chehebars." *See* Exhibit C. Plaintiffs' counsel also knows that the Receiver's position is that the Stay Order does not apply to claims against the Chehebars.

## CONCLUSION

For more than four years, this Court has repeatedly authorized its Receiver to collect money owed under the MCA Agreements. This Court has also squarely rejected Plaintiffs' assertion that the MCA Agreements are usurious loans. And Plaintiffs ultimately entered into a settlement agreement with the Receiver in which they agreed to the Receiver's continued collections of money owed under the MCA Agreements. There is no reason that Plaintiffs should now be permitted to relitigate the issue of the MCA Agreements' validity here or in any other forum or that Plaintiffs' counsel should be permitted to continue their *ex post* forum shopping. The doctrine

---

[9] Plaintiffs' counsel made the same argument in the EDPA Action, but the court in that case has not yet ruled. *See* Countercl. Pltfs.' Memo. of Law In Opp. to Countercl. Defs.' Mot. to Dismiss at 7, *EDPA Action* (Dec. 6, 2024), ECF No. 81 ("this action—and more broadly all lawsuits against CBSG and its co-conspirators—were subject to a court-imposed national litigation stay").

of issue preclusion is designed to address these very tactics, to prevent the inconsistent decisions on the MCA Agreements' validity that Plaintiffs' and their counsel actively pursue, and to avoid the waste of judicial resources and time that will occur if Plaintiffs' claim is permitted to proceed. The Court should therefore rule that Plaintiffs are precluded from relitigating the issue of whether the MCA Agreements are usurious loans and dismiss the TAC with prejudice. And even if issue preclusion were not fatal to Plaintiffs' RICO claim, the claim is time-barred because Plaintiffs' allegations make clear that their RICO claim accrued more than four years before they filed the TAC.

## REQUEST FOR HEARING

The Chehebars respectfully request a hearing on this motion. The Chehebars submit that oral argument will assist the Court in its evaluation of the both the legal issues and the intertwined factual and procedural history of the Receivership, this action, the SDNY Action, and the EDPA Action. The Chehebars estimate than one (1) hour will be required for argument.

Dated: June 11, 2025

Respectfully submitted,

s/ *Robert G. Keefe*
Robert G. Keefe
Bruce A. Weil
Marshall Dore Louis
BOIES SCHILLER FLEXNER LLP
100 S.E. Second Street, Suite 2800
Miami, FL 33131
TEL: (305) 539-8400
FAX: (305) 539-1307
E-MAIL: mlouis@bsfllp.com
rkeefe@bsfllp.com
bweil@bsfllp.com

*Attorneys for Defendants GEMJ Chehebar GRAT, LLC, Josef Chehebar, and Isaac Shehebar*